Parsons, C. J.
This writ was sued at the motion of the Blue-Hill Turnpike Corporation, to quash the proceedings of the Sessions, in issuing a warrant to the sheriff to inquire by a jury into the damages awarded * to Patrick Jeffrey by [*421] the committee who located the turnpike, in receiving the verdict, and in the judgment entered thereon.
Several objections have been made to the conduct of the sheriff and of the jury; and witnesses have been produced to prove the *328 facts on which those objections are grounded; but as these objections do not appear on the record certified, we cannot take notice of them.
The objection apparent on the record which is relied on, is to the order of Sessions made on the return of the verdict. The Sessions have not only ordered the verdict to be recorded, b.ut they have further ordered, that the sum assessed be paid by the corporation within six months, and that, in default thereof, a warrant of distress be levied on the personal property of the proprietors. This last order is objected to as bad, because the corporation, in its corporate capacity, is alone liable for the payment, and not the personal property of the corporators. The act. creating this corporation [<SW. of 1803, c. 130.], provides that “ the corporation shall be liable to pay all damages which may arise to any person by taking his land for the road,” to be estimated by a committee of the Sessions, saving to either party the right of trial by jury, according to the law which makes provision for the recovery of damages arising from laying out highways. The statute of the same year, c. 150., also enacts that whenever a committee or jury shall be appointed to estimate the damages arising from locating turnpikes, the turnpike corporation, being a party, shall be liable to costs in those cases in like manner as counties are liable in cases of county roads. And the statute of 1804, c. 125., defining the powers and duties of turnpike corporations, also provides that the corporations shall be liable to pay all damages that may be estimatéd by the locating committee, saving to either party a right of trial by jury respecting damages only, accord- [ * 422 ] ing * to the law making provision for the recovery of damages arising from the laying out of highways.
From these acts it is very clear that the corporation shall be answerable, and not the corporators, for the damages any owner of land has sustained, whether the same be assessed by a committee, or by a jury.
As the law regulating the laying out of county roads directs the damages first to be estimated by the locating committee, and after-wards to be assessed by a jury on the petition of either party ag grieved at the estimation, which jury have power also to alter the location, and as these damages may be recovered against the inhabitants of the town through which the road passes, by a warrant of distress, which may be levied on the personal estate of any inhabitant ; it has been argued that the like remedy is by analogy provided against turnpike corporations.
But there does not appear to be much analogy in the two cases. The funds which towns have, out of which they can pay these damages, is the individual property of the several inhabitants, who *329 may be compelled to contribute by the payment of a tax, to be assessed and collected for this purpose. A turnpike corporation has not this remedy. It may assess on each share an equal proportion of the damages, and if the owner does not choose to pay, his share may be sold, and it may bring much less than that proportion.
But the great difference lies in the want of a remedy for the corporator, whose estate may be taken by distress, against the corporation ; whereas an action is expressly given to the inhabitant of a town to recover, against the town neglecting to pay the damages, all the money he has paid on the warrant of distress.
There is not, therefore, a sufficient analogy, from which we can determine, that money expressly charged on the corporation can be recovered against the personal property of any of the corporators.
* It has been further argued, that if a turnpike cor- [ * 423 ] poration refuse to pay the damages, the owner of the land may have no effectual remedy, as the corporation may have no corporate property.
This case may exist, and the legislature might have guarded against it, by providing that the location of the road should have no effect, until the damages were paid, tendered or secured. Or the legislature may, by legal process, cause the franchise to be seized for the commonwealth, as the powers of the corporation have been abused. In that case, the commonwealth holding the franchise, may pay the owner of the land, or extinguish the franchise, and restore the land to him. However this may be, we cannot legislate, or alter the law.
It is therefore our opinion that the Sessions, in ordering the warrant of distress to issue, erred, and that their proceedings cannot be affirmed.
The next question is, whether we can quash the proceedings so far as they relate to the order of payment, and confirm them as to the residue; or whether we must quash the whole.
It is admitted that on certiorari we can enter ho new judgment, as we can on error; but the respondents insist that in this case the whole of the proceedings must be quashed.
In the case of the Commonwealth in certiorari vs. Carpenter (1), this Court quashed the proceedings in part, and affirmed them as to the residue, where the part quashed was independent of, and unconnected with the part affirmed. And this case may be considered as in point; but as no objection was made to the power of the Court as to this point, it was not argued, and we are willing to *330 re-examine the subject, without feeling ourselves bound by the judgment in that case.
Upon further consideration of the subject, we are satis- [* 424 ] fled that there are cases upon certiorari, where the * Court. may quash part of the proceedings of an inferior Court, and affirm part. These proceedings may be considered as issuing in orders passed in civil causes, or in sentences in criminal causes. In a civil cause the order may consist of several distinct and independent parts, and each part may be considered as a separate order, complete m itself. Thus in a pauper cause, an order to remove three different persons may be considered as three orders. And if either order is illegal, it may be quashed, and the other orders affirmed.
In the case of Rex vs. The Inhabitants of Madley (2), the order related to the settlement of the two parents and their child. The order was quashed as to the child, and confirmed as to the parents. In that case is cited another, in which the proceedings were confirmed as to the point of the appeal, and quashed as to the reservation of a question of costs. So a sentence in a criminal case may consist of distinct parts complete in themselves, and may therefore be considered as several sentences. Thus when the statute gives a forfeiture and no costs, if an inferior Court, after passing sentence for the forfeiture, should award costs, the proceedings as to the costs may be quashed. But if the statute also give costs, and costs are awarded, but not pursuant to the statute, the whole proceedings must be quashed, because the party entitled to costs cannot recover them but by a prosecution for the forfeiture.
Where the several parts of the proceedings are connected together and depend on each other, there the whole must be quashed, and not a part. This is generally the case in convictions, but there may be particular cases excepted.
In the case of The King vs. Hale (3), the defendant’s cart and horses had been employed in removing smuggled tea, and [ * 425 ] the tea, cart and horses were adjudged to * be forfeited, and the defendant was also sentenced to forfeit treble the value of the tea for concealing it. There was no evidence that he had concealed the tea; and the conviction was quashed as to the treble value, and affirmed as to the rest. In this case the question as to the treble value was distinct, and it might be recovered by another process against him, who in fact had concealed it. It is true, the reporter remarks that the counsel for the defendant seemed to be of opinion that a conviction could not be adjudged good in *331 part, and bad in part; but that he consented for the benefit of his client. Now it is not to be presumed that the Court would enter a judgment not warranted by law, from the consent of either party. The doubt of the counsel was probably well founded as to convictions in general, because the several parts are, in most cases, all dependent upon each other.
In The King vs. Symonds (4), the defendant was liable to a forfeiture to the informer, and the poor, with the reasonable charges of recovering it. And on conviction, he was adjudged to pay the forfeiture with the reasonable charges, the justices not ascertaining the amount of the charges; and for this cause, the whole conviction was quashed; for the adjudication of the forfeiture was not a complete sentence, as the informer could afterwards have no remedy for the charges, but by suing for the forfeiture.
The case before us is an order of the Sessions in a civil suit; and if the order to record the verdict is perfect in itself, it may be adjudged good, although the order for payment be bad.
But it has been very ingeniously argued by the counsel for the respondents, that the order for recording the verdict is not complete; for although it may ascertain the amount of the damages, to which Jeffrey may be entitled, yet that Jeffrey can have no remedy for the payment, * if only the subsequent order [ * 426 ] for payment be quashed; and that the whole ought, to be quashed, that he, by a new inquiry into the damages, may have a regular order for the payment of the sum, which another jury may assess. To support this reasoning, it has been insisted that, as in cases of damages arising from locating county roads, the only remedy for the owner of land is by a warrant of distress against the town, ordered at the same term when the damages are ascertained of record, so in this case Jeffrey’s only remedy is by a like warrant against the corporation, ordered at the term when the verdict is recorded.
Neither the statute creating this corporation, nor any statute relating to turnpikes, expressly authorizes a warrant of distress against the corporation for the use of the owner of the land. And it may deserve inquiry whether the remedy is not by action of debt at common law, and not by warrant of distress. But on this point we give no opinion.
Allowing the warrant of distress to be the proper remedy on the neglect of the corporation to pay the damages within the time ordered by the Sessions, we are satisfied that it is not necessary that the Sessions should order payment at the term when the verdict is recorded. The order may, on motion of the party grieved, be made *332 at any subsequent term ; and if payment be not made accordingly, a warrant of distress may then issue. This point was fully considered in the case of Gedney vs. The Inhabitants of Tewksbury (5), and the opinion there given is an authority in point.
Upon the whole we are satisfied with the opinion of the Court in the case before referred to, of the Commonwealth vs. Carpenter; and in this case the order of the Sessions! 80 far as it relates to the recording of the verdict, and the payment by the corporation, is adjudged good, and the order relating to the issuing of the warrant of distress is adjudged bad.

337-13"> 3 Mass. Rep. 268

 2 Str. 1198.

 Cowp. 728

 1 East. 189.

 3 Mass. Rep. 307.